No. 34,257

L. W. BALDWIN and GUY A. THOMPSON, Trustees of THE MISSOURI PACIFIC RAILROAD COMPANY, Debtor, *Appellants*, v. JOHN A. FENIMORE and FRED BUTLER, Individually and as Partners doing business as the INTERURBAN CHAT COMPANY, *Appellees*.

(89 P. 2d 883)

Opinion filed May 6, 1939.

*Robert S. Lemon,* of Pittsburg, *W. P. Waggener, O. P. May, B. P. Waggener* and *Ralph M. Hope,* all of Atchison, for the appellants.

*C. O. Pingry* and *Carl Pingry,* both of Pittsburg, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This is an appeal from an order sustaining a demurrer to an amended petition.

In order that various contentions set forth in the briefs may be more easily understood, the history of the pleadings will be given in some detail. The plaintiffs are the trustees of the Missouri Pacific Railroad Company. The only defendant served with summons was John Fenimore. He and defendant Butler were engaged in business as Interurban Chat Company. We shall refer to the parties hereafter as the plaintiff and the defendant.

As originally filed on September 20, 1935, the petition, omitting formal matters and the status of the parties, charged that between November 30, 1931, and December 7, 1931, inclusive, defendant loaded on the line of the Northeast Oklahoma Railroad Company at Reece, Kan., fourteen carloads of chat, destination Altoona, Kan., on the plaintiff's line, consigned to Kansas State Highway Commission, care of DuBois Construction Company, the dates, car numbers, weights and charges being shown on an account attached to the petition as exhibit A; that the shipments moved on written bills of lading executed by defendant, copies being attached as exhibits; that upon arrival the fourteen cars were delivered to the consignee, who failed upon demand to pay the freight charges thereon, and that according to the regularly filed and approved schedule of

freight rates in effect at the time there was due from defendant to plaintiff the sum of $800.81 and interest from December 7, 1931, at six percent, for which judgment was prayed. Exhibit A referred to is headed "Statement of account with," etc., and lists the fourteen cars by freight bill numbers, dates, car numbers, all containing chat from Treece, Kan., and showing weights and charges on each particular car and the total charge. This account was verified by affidavit of plaintiffs' attorney.

Each of the five bills of lading was a uniform straight bill of lading, nonnegotiable, two bills covering two cars each, two covering three cars each, and one covering four cars. We notice these bills of lading only to state that in each the consignor did not sign the portion restricting delivery only to the consignee upon payment of the freight, but that he did agree by each bill of lading that consignor should be liable for freight, and that in each bill the weight of each car was shown to be (subject to correction) 100,000 pounds.

On December 30, 1935, with consent of the trial court, defendant filed a motion to have the petition made more definite and certain by setting out a copy of the order appointing the trustees, and by setting out whether the demand that defendant pay the freight was oral or in writing and if in writing to set out a copy, by stating whether the schedule of freight rates was filed with the Interstate Commerce Commission or the Public Service Commission of Kansas, and to set out a copy of the schedule. On May 16, 1936, the trial court denied the first portion of the motion and allowed the remainder, giving plaintiff ten days in which to plead. The amendments sought were made by additions to the petition and filed on October 7, 1936, no consent of court or opposing counsel being noted on the document filed. Thereafter and on December 12, 1936, defendant obtained consent from plaintiffs' counsel and filed a general demurrer to the petition as amended. On November 6, 1937, this demurrer was sustained, and the plaintiff was given leave to amend by striking out the word "account" and inserting the word "statement" in the petition, and by striking the words "of account" at the top of exhibit A as well as the verification thereto, defendant being given time to plead after the petition had been amended. The amendments were made and the defendant again demurred. After consideration of argument thereon, and of briefs thereafter filed, the court sustained the demurrer, and plaintiff appeals, the assignment of errors covering the rulings on both demurrers.

In the course of his argument in support of the trial court's ruling, appellee at times insists that the first amendment to the petition, having been made out of time and without consent, was a nullity. Defendant did not file any motion to strike, but on the contrary, obtained plaintiff's consent and filed a demurrer out of time. Under such circumstances, defendant may not now say the amendment was a nullity. (See *Jeffs v. Flickenger,* 14 Kan. 308.) We shall treat the amendment as though it had been made in time.

The principal questions involved are whether the petition declared on written contracts evidenced by the several bills of lading, or on an account, for if the latter, the action was barred by the statute of limitations. In this court appellee presents an argument that the allegations of the petition do not sufficiently disclose a contract of carriage whereby defendant became liable to the plaintiff. Appellant answers that such a contention was not presented in the trial court, and is made here for the first time. We shall not resolve that dispute. We have heretofore summarized the allegations of the petition. Without repeating them, we think they are sufficient to support a claim by the delivering carrier to recover for freight consigned by the shipper.

Our statute (G. S. 1935, 66-304) requires that any common carrier receiving property for transportation from one point to another in this state shall issue a receipt or bill of lading. Under the pleadings the defendant as consignor executed and accepted the bills of lading covering the fourteen cars of chat and the shipments were moved by the initial carrier and delivered by the plaintiff carrier.

The nature of a bill of lading has been often defined. In 9 Am. Jur. (Carriers, § 412), p. 673, it is said:

"A bill of lading operates both as a receipt and as a contract. Insofar as it acknowledges the receipt for transportation of the goods specified and described therein, it is a mere receipt; but insofar as it sets forth the terms on which the transportation is to be made, it operates, upon acceptance, as a contract between the shipper and the carrier."

And to the same general effect see 10 C. J. (Carriers, § 251), p. 192.

*Railway Co. v. Simonson,* 64 Kan. 802, 68 Pac. 653, involved constitutionality of Laws 1893, ch. 100, making statements of weights in a bill of lading conclusive evidence. We are not concerned with that case further than to note the following definition:

"A bill of lading contains two parts—one a receipt for the goods, the other a contract for their carriage." (p. 804.)

This phase need not be developed further. The shipments moved under written contracts. The question then follows whether the instant action was founded on the contracts evidenced by the bills of lading, or whether it was founded on an account. It should here be noted, also, that appellee contends the action was one to recover on a statutory liability, the theory being that the carrier is prohibited from contracting with reference to those matters placed under regulation and control of the body now known as the corporation commission of the state of Kansas; that it has power to fix rates of carriage and there can be no deviation therefrom nor any special contract pertaining thereto.

Before discussing the specific allegations of the original petition and the petition as amended, it may be well to notice the law as laid down in general authorities and in decisions from other jurisdictions.

In 37 C. J. (Limitation of Actions, § 85), p. 756, is the following:

"A bill of lading, when it expresses the consideration to be paid, or states that the amount to be paid shall be in accordance with the established rate, is a contract in writing, and any action upon the liability, express or implied, arising out of the same is controlled by the statute limiting actions of that character. But the statute does not apply to an action by a carrier against a shipper for the amount of an undercharge on an interstate shipment where the written contract did not cover a local service or a local rate involved in the action."

In *Oregon-Wash. R. R. & Nav. Co. v. Seattle Grain Co.*, 106 Wash. 1, 178 Pac. 648, the railroad sought to recover an undercharge where the freight charged was less than required by published tariffs. It was contended the action was barred by the statute of limitations. Under the statutes of that state, the limitation on contracts in writing or liability, express or implied, arising out of written agreement was six years; on contracts not in writing, etc., three years. The action purportedly was founded on the contract evidenced by bill of lading. In holding the cause of action not barred by the statute of limitations, it was said:

"Since the bill of lading is a contract, it is, of course, a contract in writing, and any action upon the contract, or any action upon a liability, express or implied, arising out of the contract, is within the statute if commenced within six years from the time the cause of action accrued, unless the circumstance that the contract does not specifically name the sum to be charged for the carriage, but provides that the sum to be paid shall be the statutory rate, changes the nature of the liability from one on contract, or one arising out of contract, to a liability created by law. It seems clear to us that it does not have this effect. A liability created by statute is one in which no element of

agreement enters. It is an obligation, which the law creates in the absence of an agreement. But the present liability is not of this sort. The law but fixes the rate to be charged when a contract of carriage is made. In other words, the law does not create the liability; it but determines the amount of the liability created by the express contract of the parties. As such, it is not a liability created by statute. It is a liability arising out of the contract which the parties have by their writing expressed." (p. 8.)

And see *Seaboard Airline Ry. v. Luke,* 19 Ga. App. 100, 90 S. E. 1041, referred to in the above opinion.

The supreme court of Washington again considered the matter in *Warren v. Rickles,* 129 Wash. 443, 225 Pac. 442, and held to the same effect as above.

In *Mo. Pac. Railroad Co. v. Pfeiffer Stone Co.,* 166 Ark. 226, 266 S. W. 82, the railroad company sought to recover a balance of freight charges, shipment having been on bill of lading. The stone company contended the action was not on written contract and was barred by the statute of limitations. After holding the consignor was bound on its express contract, the court held the action was not barred, saying, in part:

"In the case before us the carrier sued the shipper for a balance due on freight, and relied upon the contract to recover. As we have already seen, the bill of lading was the contract of shipment between the parties, and the tariff or rates on file became as much a part of the contract as if written in it. Therefore, the bill of lading was a contract in writing, and the five-year statute of limitations governs. This holding is in accordance with the decision in *C., R. I. & P. R. Co. v. Cunningham Commission Co.,* 127 Ark. 246." (p. 232.)

In *Sunset Pac. Oil Co. v. Railroad Co.,* 110 Cal. App. 773, 290 Pac. 434, questions of California practice were involved which need not be noticed. The action was brought by the oil company to recover *excess* freight charges paid. The defendant carrier demurred, one of its grounds being the action was barred. In disposing of that contention, the court said:

"It remains, then, to determine what statute of limitations applies to a case of this character. Respondent urges that an action to recover an overcharge on a contract of carriage is an action founded upon an instrument in writing, and that the four-year statute of limitations applies under the provisions of section 337 of the Code of Civil Procedure. Respondent cites a case of *Houston & T. C. Rly. Co. v. Southern Architectural Cement Stone Co.,* 112 Tex. 139, 245 S. W. 644, holding that an action to recover a tariff overcharge was founded upon a contract in writing, and that therefore the four-year statute, and not the two-year statute of limitations, applied. In California it has been held in the *Pioneer Fruit Co. v. Southern Pac. Co.,* 47 Cal. App. 44, 190 Pac. 50, that a bill of lading is not only a receipt for the goods consigned to the

carrier for shipment, but also a contract between the carrier and the shipper as to the transportation and delivery of the goods to the consignee or other person therein designated, and upon the terms therein specified, and an action will lie against the carrier for a breach thereof if commenced within four years after the liability arose. This was a case in which damages were sought for insufficient icing of a carload of cherries and for unreasonable delay in shipment. In many cases it has been held that an action brought by a carrier to recover the full tariff charge, where an undercharge has been made, is an action founded on an instrument in writing. (See *N. Y. Central Ry. Co. v. Mutual Orange Distributors,* 251 Fed. 230; *Oregon-Washington R. & Nav. Co. v. Seattle Grain Co.,* 106 Wash. 1, 178 Pac. 648; *St. Louis Southwestern Ry. Co. v. Shields Grain & Coal Co.,* [Tex. Civ. App.] 220 S. W. 183.) In construing the foregoing cases, a distinction should be made between a suit brought to enforce the obligation of a contract as expressed in a written instrument and a suit brought to enforce an obligation which may in some remote way arise out of or be defined by a written instrument. Appellant here seeks to recover money paid. Certainly, the complaint does not allege any agreement in writing to return money paid. In order to be founded upon an instrument in writing, the instrument must itself contain a contract to do the thing, for the nonperformance of which the action is brought. (*McCarthy v. Mt. Tecarte Land Co.,* 111 Cal. 328, 43 Pac. 956; *Thomas v. Pacific Beach Co.,* 115 Cal. 136, 46 Pac. 899; *O'Brien v. King,* 174 Cal. 769, 772, 164 Pac. 631; *Scrivner v. Woodward,* 139 Cal. 314, 316, 73 Pac. 863.) There is not alleged in the complaint any express stipulation or agreement to do the thing which the action seeks to enforce. The contract as alleged was to carry goods at the published tariff, but no written agreement to repay overcharges is alleged. The action is to recover the money paid as an overcharge. We are of the opinion that the four-year statute of limitation is not applicable." (p. 781.)

And see, also, *New York Cent. R. Co. v. Mutual Orange Distributors,* 251 Fed. 230; *St. Louis, Southwestern Ry. Co. v. Shields Grain & Coal Co.,* (Tex. Civ. App.) 220 S. W. 183, to the same general effect.

In *New v. Denison Clay Co.,* 260 Fed. 70, plaintiff, as receiver of a railway company, sought to recover from a consignor an underpayment of freight, forwarded on bills of lading. In the trial court a demurrer had been sustained on the ground the causes of action were barred by the statute of limitations of the state of Kansas, where the cause of action accrued and the action was brought. The circuit court of appeals held that although the bills of lading did not state the rate, that rate was fixed by applicable tariffs published as required by statute, that "That is certain which can be made certain." On the question of limitations it was held:

"Under the rule of law that the bill of lading required to be issued by the initial carrier upon an interstate shipment governs the entire transportation, and fixes the obligations of all participating carriers to the extent that its terms

are applicable and valid, such a bill of lading obligating the owner to pay the freight, in connection with the files and published tariffs, which become a part thereof, constitutes a written contract to pay the lawful freight as shown by such tariffs, and an action may be maintained thereon within five years, under Gen. St. Kan. 1915, § 6907 (1)." (Syl.)

Appellee directs our attention to a dissenting opinion in the above case, and states that it is in line with the holding of this court, and in support cites *Railroad Co. v. Thisler*, 90 Kan. 5, 133 Pac. 539. We do not think that the case supports the contention. Plaintiffs brought a suit to recover an undercharge, but did not rely on the bill of lading. The defendant sought by way of counterclaim to recover damages for injury to a jack included in the shipment. On the ground the railroad company was a nonresident, it was held that its contention the counterclaim was barred by the statute of limitations could not avail. This court said, in part:

"But we do not regard this action as one on the contract, and the attempt to set it up to defeat the counterclaim we do not deem sufficient for the accomplishment of the purpose. . . . If the rate found by the jury was in fact the legally established and controlling rate, then as it was the duty of the carrier to charge it, a corresponding right exists to collect it." (p. 11.)

In the foregoing case, no mention was made of the statutory requirement that a bill of lading issue, nor was there any discussion of the contractual relation between a shipper and a carrier. We do not regard that decision as authority to sustain the contention that liability for freight charges, as involved in the instant case, is a liability created by statute. In *Fidelity & Deposit Co. of Maryland v. Lindholm*, 66 F. 2d 56, 89 A. L. R. 279, 283, is the following:

"'A liability created by statute' is 'a liability which would not exist but for the statute.' (*Hocking Valley R. Co. v. New York Coal Co.*, C. C. A. 6, 217 F. 727, 730.)" (p. 58.)

We agree with the definition in *Oregon-Wash. R. & Nav. Co. v. Seattle Grain Co.*, 106 Wash. 1, 178 Pac. 648, that:

"A liability created by statute is one in which no element of agreement enters. It is an obligation which the law creates in the absence of an agreement." (p. 8.)

As bearing on the question, see, also, *Becker v. Hulme*, 53 Kan. 574, 36 Pac. 986; *Hollinger v. Dickinson County*, 115 Kan. 92, 221 Pac. 1116; and *Montgomery County Comm'rs v. McKittrick*, 141 Kan. 283, 40 P. 2d 352. The liability for the freight charges was not a liability created by statute.

Our statute requires issuance of a receipt or bill of lading, and

legally a shipment could not move forward without one. In the instant case, bills of lading were issued by the carrier, executed by the consignor, and the shipments were moved by virtue of the contracts thus made. Under those contracts, the consignor agreed to pay the freight charges, and it is those specific charges, not an underpayment, which the carrier now seeks to recover.

The further question remains whether by its pleading the plaintiff waived its suit on contract and sued on account. The several bills of lading showed weight of each shipment to be 100,000 pounds, but that such weight was subject to correction. To determine the amount due for freight on each particular car, it was necessary to determine the correct weight of the shipment and measure it by the effective rate. We take notice of the fact that railroads are not equipped with track scales at each of their stations where freight is loaded, and that carloads of freight must be weighed before the amount of freight due may be computed. In any action to recover freight charges, it would certainly be proper to declare on the contract evidenced by the bill of lading, and to state a complete cause of action it would also be necessary to show the amount or weight of freight hauled and the charge therefor based on the rate as specified in the tariffs in effect under the statute. As we interpret and construe the petition now under attack, that is what the pleader did. We do not think the mere fact the pleader used the words "statement of account," or that the account was verified, changed the action from one on the contracts declared to one on account. The so-called account was only a detailed statement of the amount due under the contract. Our conclusion is that the petition stated a cause of action.

From what has been said it follows that the action was neither upon a liability created by statute, nor upon contract not in writing, in either of which causes it must have been brought within a period of three years after it accrued, but was on a contract in writing and was brought within a period of five years after it accrued. (G. S. 1935, 60-306, *First.*)

It is not necessary that we discuss appellee's contention that appellant by pleading over waived any error of the trial court in ruling on the first demurrer, as appellant in a reply brief concedes that to be the rule. We do notice appellee's contention that the demurrer was sustained over five years after the cause of action accrued, and the amendment came too late. As has been indicated, we are of · opinion the petition was good as against the first demurrer. The

appellant may not complain nor may the appellee take advantage of the ruling on the demurrer, for at the time of the ruling, time to plead·further was given (G. S. 1935, 60-761). Under such circumstances there was no final judgment. (*Harmon v. James*, 146 Kan. 205, 209, 69 P. 2d 690.) The amendments thereafter made did not change the cause of action pleaded in the original petition, and the bar of the statute of limitations did not fall.

We have heretofore set out fully the course of the pleadings. Strictly speaking, we have for consideration only the ruling of the trial court on the second demurrer and that ruling we conclude was erroneous, and it is reversed and the cause remanded for trial.